UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

NORTHWESTERN NATIONAL
INSURANCE COMPANY,

    Petitioner,

 - against -

INSCO, LTD.,

    Respondent.

------------------------------------------------------ X

**OPINION AND ORDER**

11 Civ. 1124 (SAS)



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Petitioner Northwestern National Insurance Company ("NNIC") petitions this Court to appoint a replacement arbitrator for respondent Insco, Ltd. ("Insco") pursuant to section 5 of the Federal Arbitration Act ("FAA").[1] Insco asks this Court to deny NNIC's petition on the basis that Insco has already appointed a replacement arbitrator. For the reasons discussed herein, NNIC's petition is denied.

## II. BACKGROUND

### A. Underlying Dispute

---

[1] *See* 9 U.S.C. § 5.

1

In 1978, Insco and NNIC executed a reinsurance agreement whereby Insco agreed to reinsure a certain percentage of NNIC's liabilities in exchange for premium payments ("Reinsurance Agreement").[2] The Reinsurance Agreement contained the following arbitration clause requiring a tripartite panel of arbitrators:

> If any dispute shall arise between the Company and the Reinsurers with reference to the interpretation of this Agreement or their rights with respect to any transaction involved, whether such dispute arises before or after termination of the Agreement, such dispute, upon the written request of either party, shall be submitted to three arbitrators, one to be chosen by each party, and [the] third by the two so chosen.[3]

In 1999, NNIC reimbursed policyholder Abex Corporation ("Abex") for liabilities arising from thousands of asbestos claims brought against Abex.[4] Three other insurance companies — Maryland Casualty, Liberty and Travelers — paid Abex's defense costs and subsequently sought contribution from NNIC.[5] After mediation in the underlying litigation, NNIC secured discounted contribution costs and sought reimbursement from Insco pursuant to the Reinsurance Agreement.[6] Insco

---

[2] *See* Reinsurance Agreement, Ex. 1 to the 2/18/11 Declaration of Matthew C. Ferlazzo, petitioner's counsel ("Ferlazzo Decl.").

[3] Reinsurance Agreement ¶ 10.

[4] *See* Ferlazzo Decl. ¶¶ 3-4.

[5] *See id.* ¶¶ 6-9.

[6] *See id.* ¶¶ 8-9. In addition to the contribution costs, NNIC sought reimbursement for the expenses incurred in defending the contribution claims,

refused to pay the claimed amount and NNIC commenced arbitration proceedings in June of 2009.[7]

### B. Arbitration Proceedings

Pursuant to the Reinsurance Agreement, NNIC and Insco each selected respective party-appointed arbitrators.[8] The umpire was thereafter selected by lot.[9] On February 2, 2010, at an organizational meeting, the arbitrators made disclosures about possible conflicts of interest and both parties accepted the panel as properly constituted.[10]

The arbitration has since been characterized by an ongoing dispute regarding the alleged failure of both party-appointed arbitrators to disclose possible conflicts of interest arising after the organizational meeting. On October 28, 2010, the umpire revealed that he had learned that one of Insco's counsel was working

---

interest, and damages for an alleged breach of Insco's duty of good faith. *See id.* ¶ 11.

[7] *See* NNIC's Petition to Appoint an Arbitrator ("Petition") ¶ 8.

[8] *See id.* ¶¶ 9-10. Due to allegations of partiality made against the panel, NNIC has redacted the names of its party-appointed arbitrator and the umpire.

[9] *See id.* ¶ 11.

[10] *See* 2/2/10 Transcript of Organizational Meeting, Ex. 2 to the Ferlazzo Decl., at 9-10.


for an insurance company for which Insco's arbitrator was a board member.[11] On December 10, 2010, after Insco's counsel requested that the panel update its disclosures, NNIC's arbitrator informed the parties that she had since been appointed as an arbitrator in two arbitrations that involved NNIC's counsel's firm.[12]

On February 15, 2011, three days prior to oral argument on NNIC's summary judgment motion in the arbitration proceedings, Insco sent a 21-page letter to the panel demanding that all three arbitrators resign immediately on the basis of evident partiality.[13] Insco informed the arbitrators that in the event a new panel was not constituted, it intended to "take this matter to court."[14] Insco claimed that it had uncovered additional evidence of NNIC's arbitrator's conflict of interest and that the umpire had demonstrated partiality throughout the proceedings.[15] That same day, Insco's arbitrator resigned from the arbitration panel stating that NNIC would likely challenge any adverse award on the basis of

---

[11]   *See* 10/28/10 Transcript, Ex. 3 to the Ferlazzo Decl., at 4.

[12]   *See* 12/10/10 Email, Ex. 6 to the Ferlazzo Decl.

[13]   *See* 2/15/11 Letter from Insco's Counsel to Arbitration Panel, Ex. 4 to the 3/4/11 Declaration of Robin C. Dusek, respondent's counsel, ("Dusek Decl.").

[14]   *Id.* at 21.

[15]   *See id.* at 1-20.

his alleged partiality and that the current panel was unable to give Insco a "full and fair hearing on the merits."[16] Neither the umpire nor NNIC's arbitrator resigned from the panel.[17]

On February 16, 2011, Insco's counsel emailed the umpire and NNIC's counsel reiterating that it sought a new panel and informing NNIC that Insco would select an additional party-appointed arbitrator.[18] Two days later, on February 18, 2011, NNIC filed the instant petition seeking judicial appointment of an ARIAS-certified[19] arbitrator to replace Insco's arbitrator.[20] On March 4, 2011, Insco's counsel informed NNIC's counsel that Insco had appointed Jonathan Rosen — an ARIAS-certified arbitrator — as its replacement party arbitrator.[21] NNIC's counsel objected on the grounds that Insco did not have authority under

---

[16] 2/15/11 Letter of Resignation, Ex. 1 to the Dusek Decl.

[17] *See* Ferlazzo Decl. ¶¶ 40-41.

[18] *See* 2/16/11 Email from Joseph T. McCullough, respondent's counsel, to the Umpire and Evan Smoak, petitioner's counsel, Ex. 2 to the Dusek Decl.

[19] ARIAS stands for the AIDA Reinsurance and Insurance Arbitration Society.

[20] *See* Petition.

[21] *See* 3/3/11 Email from Joseph T. McCullough to Evan Smoak, Ex. 3 to the Dusek Decl.

the Reinsurance Agreement to appoint a replacement arbitrator.[22]

## III. APPLICABLE LAW

The FAA states that the method for appointing arbitrators and umpires provided for in an arbitration agreement must be followed.[23] In the absence of such a provision, however, the FAA provides:

> [I]f no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein . . . .[24]

Thus, courts have the authority to appoint a replacement arbitrator where an arbitration agreement does not specifically provide a method for doing so.[25] Courts

---

[22] *See* 3/3/11 Email from Evan Smoak to Joseph T. McCullough, Ex. 3 to the Dusek Decl.

[23] *See* 9 U.S.C. § 5 ("If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed . . . .").

[24] *Id.*

[25] *See Trade & Transp., Inc. v. Natural Petroleum Charterers Inc.*, 931 F.2d 191 (2d Cir. 1991) (affirming district court's decision to replace party-appointed arbitrator that died after partial final judgment rather than allow new arbitration with different panel); *In re Salomon Inc. S'holders Derivative Litig.*, 68 F.3d 554, 560 (2d Cir. 1995) (noting power of court to appoint arbitrator where

have selected and appointed an arbitrator where the arbitrator to be replaced was the neutral umpire or the sole arbitrator.[26] On the other hand, where the arbitrator to be replaced was a party-appointed arbitrator, courts have deferred to the party's selection.[27] Indeed, neither this Court nor either party has found any case where a court selected a replacement party arbitrator that differed from the one selected by the party. This distinction is consistent with the underlying goal of arbitration:

> 'Arbitration agreements are aimed at amicable determination of disputes with results which both parties will be willing to accept.

---

there has been a lapse in filling a vacancy). *Cf. Acequip Ltd. v. American Eng'g Corp.*, 315 F.3d 151, 156-57 (2d Cir. 2003) (holding that a district court need not decide that an arbitration agreement is valid before proceeding to the appointment of an arbitrator).

[26]  *See, e.g., AIG Global Trade & Political Risk Ins. Co. v. Odyssey Am. Reinsurance Corp.*, No. 05 Civ. 9152, 2006 U.S. Dist. LEXIS 73258 (S.D.N.Y. Sept. 21, 2006) (appointing replacement umpire where arbitration agreement did not provide for replacement procedure); *The Home Ins. Co. v. Banco de Seguros del Estado*, No. 98 Civ. 6022, 1999 U.S. Dist. LEXIS 22479 (S.D.N.Y. Mar. 29, 1999) (appointing replacement umpire after original umpire retired); *Cae Indus. Ltd. v. Aerospace Holdings Co.*, 741 F. Supp. 388 (S.D.N.Y. 1989) (appointing arbitrator where arbitration agreement required a single arbitrator but provided no method for appointment).

[27]  *See, e.g., Insurance Co. of N. Am. v. Public Serv. Mut. Ins. Co.*, 609 F.3d 122, 132 (2d Cir. 2010) (affirming district court decision to re-appoint party arbitrator that resigned or, in the alternative, require the party to select and appoint a new party arbitrator). *See also National Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir. 2003) (affirming district court decision to fill vacancy of resigned party arbitrator with party's suggested arbitrator even where that party refused to appoint a replacement and sought to have an entirely new panel constituted).

> Toward this end, it is desirable that the arbitration panel consist[] of arbitrators chosen by each of the parties. Where imbalance is unnecessarily effected the purpose and advantage of arbitration is defeated. To this end, and so far as possible, the panel should be one mutually acceptable.'[28]

Thus, while courts have the power to replace an arbitrator where the arbitration agreement provides no procedure for doing so, it is prudent to preserve the balance of arbitrators intended by the parties if possible.

## IV. DISCUSSION

NNIC alleges that Insco demanded that the panel resign only because Insco could no longer delay the arbitration, which it was losing. Based upon this alleged bad faith strategy, together with the absence of an express method for appointing replacements in the Reinsurance Agreement, NNIC urges the Court to appoint a replacement arbitrator.[29] Insco counters that it had uncovered credible evidence of the panel's partiality and is entitled to replace its own party arbitrator.[30]

NNIC has not pointed to any case law that requires a court to select a

---

[28] *Compania Portorafti Commerciale, S.A. v. Kaiser Int'l Corp.*, 616 F. Supp. 236, 239 (S.D.N.Y. 1985) (quoting *Lobo & Co. v. Plymouth Navigation Co. of Monrovia*, 187 F. Supp. 859, 860-61 (S.D.N.Y. 1960)).

[29] *See* Petitioner's Memorandum of Law in Support of Petition to Appoint an Arbitrator ("Pet. Mem.") at 2.

[30] *See* Insco, Ltd.'s Opposition to NNIC's Petition to Appoint an Arbitrator at 7-8, 9-14.

party arbitrator upon the resignation of the party's initial selection where that party agrees to appoint a replacement. In *Insurance Company of North America v. Public Service Mutual Insurance Company* ("*INA*"), the Second Circuit affirmed a district court decision to exercise its power under Section 5 of the FAA and re-appoint a party arbitrator that had previously resigned.[31] However, unlike here, the party in that case had refused to appoint a replacement and sought new arbitration proceedings with a fresh panel. In spite of this, the district court did not select a different arbitrator. Rather, it ordered the re-appointment of the resigned arbitrator and, in the event that the resigned arbitrator declined the appointment, it ordered the refusing party to appoint a replacement.[32] Here, Insco does not seek a new panel and has already selected and appointed an ARIAS-certified replacement from the very pool that NNIC seeks to have this court use to select a replacement.[33]

NNIC also argues that allowing Insco to appoint a replacement would

---

[31] 609 F.3d 122, 132 (2d Cir. 2010).

[32] *See id.* ("[T]he district court's decision to reappoint Sullivan, or to require a replacement if Sullivan declined to rejoin, was eminently reasonable.").

[33] NNIC's reliance on *National Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462 (8th Cir. 2003) ("*NAICO*") is similarly unhelpful. In that case, a party refused to appoint a replacement for its party arbitrator and sought a new panel. The circuit court affirmed the district court decision to appoint a replacement party-arbitrator that had been previously suggested by the party rather than select a different arbitrator. *See id.*

open the door for parties to manipulate arbitration proceedings by forcing the resignation of their party arbitrator.[34] In support, NNIC points to the Second Circuit's concern in *INA* that "it would be tempting for a party to pressure its party-arbitrator, implicitly or explicitly, to resign following an adverse ruling so that it could get another shot at winning before a new panel."[35] However, the *INA* court was addressing whether or not the resignation of a panel member required that an entirely new panel be constituted. At this point, Insco is not seeking a new panel but, rather, only to appoint a replacement party-arbitrator. The replacement of one arbitrator during arbitration does not create the same incentive for manipulation as would allowing for the arbitration to begin anew with a fresh panel. Even if a party pressured its party arbitrator to resign and replaced him or her with an arbitrator more likely to rule in its favor, it could not affect the rulings of the other two arbitrators. Thus, the concerns for manipulation voiced by the Second Circuit in *INA* are not present where, as here, a party seeks to replace a single arbitrator rather than the entire panel.

The Reinsurance Agreement clearly expresses the intent of the parties that each be permitted one party-appointed arbitrator. Thus, depriving Insco of its

---

[34] *See* Pet. Mem. at 13-16.

[35] *INA*, 609 F.3d at 130.

right to appoint an arbitrator would frustrate the parties' original intent. The lack of a specific provision in the Reinsurance Agreement establishing a method for replacing arbitrators does not deprive Insco of its right, under the Reinsurance Agreement, to a party-appointed arbitrator. Indeed, in the very cases cited by NNIC, the courts deferred to the party's selection of a replacement despite the lack of such a provision in the arbitration agreements.[36] Permitting Insco to appoint a replacement party-arbitrator is consistent with the Reinsurance Agreement and the underlying goals of arbitration. Accordingly, because Insco has already appointed a party arbitrator, I decline to do so here.

## V. CONCLUSION

For the foregoing reasons, NNIC's petition is deneid. The Clerk of the Court is directed to close this motion [docket # 2] and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

---

[36] *See id.* at 127-28 ("INA does not dispute that the arbitration agreement provides no guidance as to selecting a replacement arbitrator . . . ."); *NAICO*, 328 F.3d at 464 ("[T]he 1990 agreements do not stipulate a method to replace an arbitrator in the event of a vacancy on the arbitration panel.").

Dated:     New York, New York
           May 12, 2011

## -Appearances-

**Counsel for Petitioner:**

Evan L Smoak, Esq.
Matthew Christian Ferlazzo, Esq.
Barger and Wolen LLP
10 East 40th Street, 40th Floor
New York, NY 10016
(212) 557-2800

**Counsel for Respondent:**

Joseph T. McCullough, IV, Esq.
Robin C. Dusek, Esq.
Catherine A. Miller, Esq.
Kerry Elizabeth Slade, Esq.
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, IL 60606
(312) 360-6327
(312) 360-6000