UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X

NORTHWESTERN NATIONAL
INSURANCE COMPANY,

        Plaintiff,

- against -

INSCO, LTD.,

        Defendant.

------------------------------------------------------- X

**MEMORANDUM
OPINION AND ORDER**

11 Civ. 1124 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/10/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

On October 3, 2011, this Court issued an Opinion and Order (the "Opinion") granting Northwestern National Insurance Company's ("NNIC") motion to disqualify Freeborn & Peters LLP ("Freeborn") from further representing Insco, Ltd. ("Insco") in a pending arbitration.[1] Insco now moves for leave to file the Declaration of Dale Diamond (the "Diamond Declaration") in support of its pending motion for reconsideration. For the following reasons, Insco's motion is denied.

---

[1] *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011).

1

## II. BACKGROUND

The facts in this case are fully laid out in the Opinion and can be summarized briefly. NNIC and Insco are parties to an arbitration that began in June 2009 regarding a reinsurance agreement.[2] Pursuant to the parties' agreement, each party selected an arbitrator and a third impartial umpire was selected by lottery.[3] Insco selected Dale Diamond as its party arbitrator, NNIC selected Diane Nergaard, and Martin Haber was appointed umpire.[4]

On February 11, 2011, with the arbitration ongoing, Diamond shared 182 pages of private e-mail communications between panel members — approximately 130 e-mails in total — with Freeborn which Diamond believed showed that Nergaard was biased and could not serve as an impartial arbitrator.[5] Insco's attorneys reviewed all of the e-mails, and on February 15, 2011, Insco sent a letter to the panel and NNIC demanding that all of the arbitrators resign immediately.[6] Diamond resigned, but Nergaard and Haber did not.[7] NNIC soon

---

[2]  *See id.* at *1.

[3]  *See id.*

[4]  *See id.*

[5]  *See id.* at *2.

[6]  *See id.*

[7]  *See id.*

grew suspicious that Insco was in possession of intrapanel e-mails when Insco cited to them in a declaration to this Court in a related action.[8] When NNIC demanded that Insco produce the documents, however, Insco refused.[9]

Insco appointed a replacement arbitrator for Diamond, and at the next organizational meeting on June 15, 2011, NNIC complained about the panel e-mails in Insco's possession.[10] Haber agreed with NNIC that obtaining such communications was a "massive violation," and Insco agreed to produce the documents.[11] Rather than review the e-mails, NNIC hired an attorney, Daniel FitzMaurice, to review the e-mails and prepare charts indicating when and to whom each e-mail was sent accompanied by a brief summary of its content.[12]

On June 20, 2011, the panel issued Interim Order 12 (the "Order").[13] In its Order, the panel noted that the "'release by Mr. Diamond of intra-panel communications was highly inappropriate,'" but that "'[n]evertheless, this Panel

---

[8] *See id.*

[9] *See id.*

[10] *See id.* at *3.

[11] *Id.* (quoting 6/15/11 Organizational Meeting Transcript, Ex. 1 to 7/21/11 Declaration of Matthew C. Ferlazzo, counsel for NNIC, ("Ferlazzo Decl.") at 156:20-25).

[12] *See id.*

[13] *See id.*

will continue to decide the case on the facts and evidence presented.'"[14] The panel further noted that "'this action by Mr. Diamond [ ] struck at the heart of the arbitral process in that the deliberations among the Panel are solely for the Panel's use and no one else.'"[15]

NNIC then moved to disqualify Freeborn because of its inappropriate action in obtaining intrapanel e-mails.[16] In response, I held that (1) the question of attorney disqualification is properly decided by the Court, and not by arbitrators, and (2) Freeborn's actions here warranted disqualification.[17] Insco now moves for leave to file the Diamond Declaration to accompany its motion asking this Court to reconsider the Opinion.

### III. LEGAL STANDARD

Local Civil Rule 6.3 governs the procedure for motions for reconsideration and provides that "[n]o affidavits shall be filed by any party unless directed by the Court." "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need

---

[14] *Id.* (quoting 6/30/11 Interim Order 12 (the "Order"), Ex. 7 to Ferlazzo Decl.).

[15] *Id.*

[16] *See id.* at *4.

[17] *See id.* at *5-7.

to correct a clear error or prevent manifest injustice."[18] A court will consider newly available evidence when the movant demonstrates that

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.[19]

Generally, however, "[n]ew facts, issues or arguments not previously presented to the court may not be presented" on a motion for reconsideration.[20]

## IV. DISCUSSION

Insco correctly notes that the Diamond Declaration consists of evidence that was in existence at the time of the motion, and that Insco could not have obtained statements from Diamond at that time because the June 20 panel Order prohibited any party from contacting Diamond.[21] However, nothing in the

---

[18] *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (quotation marks omitted).

[19] *United States v. International Bhd. of Teamsters*, 247 F.3d 370, 392 (2d Cir. 2001).

[20] *Sanluis Dev., L.L.C. v. CCP Sanluis, L.L.C.*, 556 F. Supp. 2d 329, 332 (S.D.N.Y. 2008).

[21] *See* the Order ("Until this hearing is concluded by the issuance of a Final award by the Panel or settlement by the parties, the parties are enjoined from contacting Mr. Diamond regarding anything having to do with this case."). I express no opinion regarding whether Insco has violated the Order by contacting

Diamond Declaration raises new arguments or facts that Insco did not already raise and pursue in its opposition to NNIC's motion to disqualify. Moreover, because the Diamond Declaration is merely cumulative and would not change the outcome of this case, Insco has failed to satisfy the Second Circuit's high standard for the receipt of newly available evidence on a motion for reconsideration.

Insco points to four elements that the Diamond Declaration will purportedly clarify: (1) that Diamond offered the e-mails without any solicitation by Freeborn or Insco; (2) that the e-mails did not relate to live matters pending before the panel; (3) that the arbitrators were allowed to share e-mails and make other ex-parte communications with the parties; and (4) that Diamond disclosed the e-mails solely out of his concern to expose Nergaard's bias, to protect Nergaard from "further abuse," and to show that the integrity of the arbitration had been compromised.[22] However, all of these justifications were already before the Court when the parties briefed the motion to disqualify and all have been fully considered. Regarding the first point, there was never any dispute that Diamond shared the e-mails with Insco and that neither Insco nor Freeborn made the initial

---

Diamond to obtain the Diamond Declaration.

[22] *See* 10/17/11 Insco's Memorandum of Law in Support of Its Motion for Leave to File the Declaration of Dale Diamond at 3 (attaching the Diamond Declaration). I note that in order to decide this motion, I have in fact reviewed the Diamond Declaration.

request for disclosure.[23] As to the e-mails not relating to pending matters, Insco has already made that argument to this Court,[24] and it has been fully considered.[25] Regarding the claim that Diamond was permitted to share e-mails with the parties and engage in other ex-parte communications, Insco has again already made that argument,[26] and once again it has been fully considered.[27] Finally, concerning Diamond's assertion that he acted to expose bias and protect Nergaard, this

---

[23] See Northwestern Nat'l Ins. Co., 2011 WL 4552997, at *2 ("On February 11, 2011, Diamond shared certain private e-mail communications among panel members with Freeborn.").

[24] See 8/22/11 Insco's Opposition to Petitioner's Motion to Disqualify Insco's Counsel ("Def. Disqual. Mem.") at 17-19 ("The Panel Communications At Issue Here Are Of No Significance.").

[25] See Northwestern Nat'l Ins. Co., 2011 WL 4552997, at *8-10 ("[D]isclosure of the foregoing discussions tended to taint the proceedings, and to the extent there is any doubt, it should be resolved in favor of disqualification.").

[26] See Def. Disqual. Mem. at 12-14 ("There is Nothing Problematic With A Party Arbitrator Sharing Panel Communications and Panel Views.").

[27] See Northwestern Nat'l Ins. Co., 2011 WL 4552997, at *7 ("While the parties in the present action certainly contemplated that they could and would communicate with their party-appointed arbitrators, in light of the ethical arbitration guidelines noted above and the conclusion of Interim Order 12, this authority cannot be construed to extend to the sharing of actual panel deliberations and communications."). In fact, the Order squarely refutes Insco's claim here. See the Order.

argument has also been made,[28] and rejected.[29] Moreover, Nergaard is an experienced arbitrator, and she could have resigned from the panel along with Diamond if she felt she needed to be protected in this case.

Finally, NNIC strongly contests any statements by Diamond that suggest that Nergaard shared e-mails or other panel deliberations with NNIC at any time.[30] Thus, because Diamond's Declaration does not provide any information that was not previously offered to the Court, it cannot be filed in connection with Insco's motion for reconsideration. Instead, Insco's motion for reconsideration must be — as motions for reconsideration generally are —"limited to the record that was before the Court on the original motion."[31]

---

[28] *See* Def. Disqual. Mem. at 5 ("Diamond Sends Insco E-Mail Evidence That He Believes Demonstrates Bias And Misconduct.").

[29] *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *7 ("Insco's actions cannot be justified by its allegations of Nergaard's lack of impartiality."). NNIC further notes that Diamond continued to support Nergaard's involvement in this and other arbitrations despite these stated suspicions of bias. *See* 10/31/11 Petitioner NNIC's Memorandum of Law in Opposition to Motion for Leave to File the Declaration of Dale Diamond at 7-8; 9/19/11 10:08 a.m. E-mail "Disclosure," Ex. A to 10/31/11 Declaration of Evan L. Smoak, NNIC's counsel, in Opposition to the Filing of the Diamond Declaration.

[30] *See, e.g.*, 10/31/11 Declaration of Matthew C. Ferlazzo, NNIC's counsel, in Opposition to the Filing of the Diamond Declaration ¶ 2.

[31] *In re Northwestern Nat'l Ins. Co.*, No. 00 Civ. 1135, 2000 WL 702996, at *1 (S.D.N.Y. May 30, 2000) (quotation marks omitted).

## V. CONCLUSION

For the foregoing reasons, defendant's motion is denied. The Clerk of the Court is directed to close this motion [Docket No. 47] and this case is to remain closed.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 9, 2011

- **Appearances** -

**For Plaintiff:**

Matthew Christian Ferlazzo, Esq.
Evan L. Smoak, Esq.
Barger and Wolen LLP
10 East 40th Street, 40th Floor
New York, NY 10016
(212) 557-2800/ 2884

Daniel L. FitzMaurice, Esq.
Matthew John Shiroma, Esq.
Day Pitney, L.L.P.
242 Trumbull Street
Hartford, CT 06103
(860) 275-0181/ 0217

**For Defendant:**

James J. Boland, Esq.
Robin C. Dusek, Esq.
Joseph T. McCullough , IV, Esq.
Catherine A. Miller, Esq.
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000