UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X

NORTHWESTERN NATIONAL
INSURANCE COMPANY,

              Plaintiff,

      - against -

INSCO, LTD.,

              Defendant.

------------------------------------------------------------- X



**OPINION AND ORDER**

**11 Civ. 1124 (SAS)**

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.    INTRODUCTION

On October 3, 2011, this Court issued an Opinion and Order (the "Opinion") granting Northwestern National Insurance Company's ("NNIC") motion to disqualify Freeborn & Peters LLP ("Freeborn") from further representing Insco, Ltd. ("Insco") in a pending arbitration.[1] Insco now moves for reconsideration of the Opinion on the grounds that (1) the Court overlooked or misapprehended certain key facts, and (2) the Declaration of Dale Diamond, offered by Insco in connection with its motion, establishes that some of the Court's

---

[1]    *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011).

factual conclusions were incorrect.  For the following reasons, Insco's motion is denied.

## II.    BACKGROUND

The facts in this case are fully laid out in the Opinion and can be summarized briefly.  NNIC and Insco are parties to an arbitration that began in June 2009 regarding a reinsurance agreement.[2]  Pursuant to the parties' agreement, each party selected an arbitrator and a third impartial umpire was selected by lottery.[3]  Insco selected Dale Diamond as its party arbitrator, NNIC selected Diane Nergaard, and Martin Haber was appointed umpire.[4]

On February 11, 2011, with the arbitration ongoing, Diamond shared 182 pages of private e-mail communications between panel members — approximately 130 e-mails in total — with Freeborn.[5]  Diamond believed that these e-mails showed that Nergaard was biased and could not serve as an impartial arbitrator.[6]  Insco's attorneys reviewed all of the e-mails, and on February 15, 2011, Insco sent a letter to the panel and NNIC demanding that all of the arbitrators

---

[2]      *See id.* at *1.

[3]      *See id.*

[4]      *See id.*

[5]      *See id.* at *2.

[6]      *See id.*

resign immediately.[7]  Diamond resigned, but Nergaard and Haber did not.[8]  NNIC

soon grew suspicious that Insco was in possession of intrapanel e-mails when

Insco cited to them in a declaration to this Court in connection with a previous

motion in this action.[9]  When NNIC demanded that Insco produce the documents,

however, Insco refused.[10]

Insco appointed a replacement arbitrator for Diamond, and at the next

organizational meeting on June 15, 2011, NNIC complained about the panel e-

mails in Insco's possession.[11]  Haber agreed with NNIC that obtaining such

communications was a "massive violation," and Insco agreed to produce the

documents.[12]  Rather than review the e-mails, NNIC hired an attorney, Daniel

---

[7]     *See id.*

[8]     *See id.*

[9]     *See id.*; *see also* 12/10/10 11:53 p.m. E-mail "RE: Panel Disclosures,"
Ex. 10 to 3/4/11 Declaration of Robin C. Dusek, counsel for Insco, in Support of
Insco's Opposition to NNIC's Petition to Appoint an Arbitrator, in *Northwestern
Nat'l Ins. Co.*, No. 11 Civ. 1124, Dkt. No. 15 (attaching an e-mail disclosed by
Diamond as an exhibit to this Court); *Northwestern Nat'l Ins. Co. v. Insco, Ltd.*,
No. 11 Civ. 1124, 2011 WL 1833303 (Opinion and Order, S.D.N.Y. May 12,
2011) (denying NNIC's motion to appoint an arbitrator).

[10]    *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *2.

[11]    *See id.* at *3.

[12]    *Id.* (quoting  6/15/11 Organizational Meeting Transcript, Ex. 1 to
7/21/11 Declaration of Matthew C. Ferlazzo, counsel for NNIC, ("Ferlazzo Decl.")
at 156:20-25).

FitzMaurice, to review the e-mails and prepare charts (the "Charts") indicating

when and to whom each e-mail was sent accompanied by a brief summary of its

content.[13]

On June 20, 2011, the panel issued Interim Order 12 (the "Order").[14]

In its Order, the panel noted that the "'release by Mr. Diamond of intra-panel

communications was highly inappropriate,'" but that "'[n]evertheless, this Panel

will continue to decide the case on the facts and evidence presented.'"[15] The panel

further noted that "'this action by Mr. Diamond [ ] struck at the heart of the arbitral

process in that the deliberations among the Panel are solely for the Panel's use and

no one else.'"[16]

NNIC then moved to disqualify Freeborn because of its inappropriate

action in obtaining intrapanel e-mails.[17] In response, I held that (1) the question of

attorney disqualification is properly decided by the Court, and not by arbitrators,

---

[13]      *See id.*

[14]      *See id.*

[15]      *Id.* (quoting 6/30/11 Interim Order 12 (the "Order"), Ex. 7 to Ferlazzo
Decl.).

[16]      *Id.*

[17]      *See id.* at *4.

and (2) Freeborn's actions here warranted disqualification.[18]  Insco now moves for

reconsideration of the Opinion and offers the Declaration of Dale Diamond in

support of its motion.  Insco's request to submit the Declaration has already been

denied.[19]

## III.   LEGAL STANDARD

Local Civil Rule 6.3 governs motions for reconsideration and provides

that the movant must set "forth concisely the matters or controlling decisions

which counsel believes the Court has overlooked."  The purpose of Local Rule 6.3

is to "'ensure the finality of decisions and to prevent the practice of a losing party

examining a decision and then plugging the gaps of a lost motion with additional

matters.'"[20]  Local Rule 6.3 must be "narrowly construed and strictly applied so as

to avoid repetitive arguments on issues that have been considered fully by the

---

[18]      *See id.* at *5-7.

[19]      *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124
(Memorandum Opinion and Order, Nov. 9, 2011, Dkt. No. 63).  The Diamond
Declaration is thus ignored for the purposes of this motion.

[20]      *Grand Crossing, L.P. v. United States Underwriters Ins. Co.*, No. 03
Civ. 5429, 2008 WL 4525400, at *3 (S.D.N.Y. Oct. 6, 2008) (quoting *S.E.C. v.
Ashbury Capital Partners*, No. 00 Civ. 7898, 2001 WL 604044, at *1 (S.D.N.Y.
May 31, 2001).  *Accord Commerce Funding Corp. v. Comprehensive Habilitation
Servs., Inc.*, 233 F.R.D. 355, 361 (S.D.N.Y. 2005).

Court."[21]

"The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."[22]  However, "[t]he decision to grant or deny a motion for reconsideration is within the sound discretion of the district court."[23]  "Reconsideration of a previous order by the court is an 'extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources.'"[24]  "'A motion for reconsideration may not be used to advance new facts, issues or arguments not previously presented to the Court, nor

---

[21]    *United States v. Treacy*, No. 08 Cr. 0366, 2009 WL 47496, at *1 (S.D.N.Y. Jan. 8, 2009) (quotation marks omitted).  *Accord Abimbola v. Ridge*, 181 Fed. App'x 97, 99 (2d Cir. 2006); *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

[22]    *Virgin Atl. Airways, Ltd. v. National Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  *Accord Bahar v. United States*, No. 08 Civ. 4738, 2009 WL 2382977, at *1 (S.D.N.Y. Aug. 4, 2009)).

[23]    *Patterson v. United States*, No. 04 Civ. 3170, 2006 WL 2067036, at *1 (S.D.N.Y. July 26, 2006) (citing *McCarthy v. Manson*, 714 F.2d 234, 237 (2d Cir. 1983)).  *Accord Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) ("A motion seeking such relief is addressed to the sound discretion of the district court with appellate review limited to determining whether that discretion has been abused.").

[24]    *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009) (quoting *In re Health Mgmt. Sys. Inc. Secs. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000)).  *Cf. Brown v. Ionescu*, 380 Fed. App'x 71, 72 (2d Cir. 2010).

may it be used as a vehicle for relitigating issues already decided by the Court.'"[25]

## IV.    DISCUSSION

Insco has not shown that reconsideration is warranted here because

Insco has failed to show that the Court overlooked any controlling cases, that any

newly available evidence warrants reconsideration, or that reconsideration is

necessary to prevent manifest injustice.  Thus Insco has not met the Second

Circuit's high standard for reconsideration under a strict construction of Local Rule

6.3.

### A.    The Court Did Not Overlook Any Controlling Cases or Fail to Consider Newly Available Evidence

Insco cannot deny that the Court possesses the inherent authority to

sanction attorneys for their conduct in court proceedings,[26] and, as detailed below,

has not shown that unethical conduct in an arbitration proceeding *cannot* warrant

disqualification.  In fact, as I told the parties at their pre-motion conference, "it

may [be that] the facts are *sui generis*.  It may be there is no reported case about an

---

[25]    *RST (2005) Inc.*, 597 F. Supp. 2d at 365 (quoting *Davidson v. Scully*, 172 F. Supp. 2d 458, 461 (S.D.N.Y. 2001)).  *Accord Shrader*, 70 F.3d at 257.

[26]    *See In re Snyder*, 472 U.S. 634, 645 n.6 (1985); *see also Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream,* 409 F.3d 127, 132 (2d Cir. 2005) ("The authority of federal courts to disqualify attorneys derives from their inherent power to 'preserve the integrity of the adversary process.'") (quoting *Board of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979)).

attorney having access to the communications among the arbitration panel," but

that does not mean that disqualification is inappropriate where attorneys engage in

unethical conduct.[27]  Insco has thus not shown that the Opinion was in any way

contrary to law or controlling precedent.

      Moreover, Insco has not shown that this Court overlooked controlling

facts in the record, and, as noted above, a motion for reconsideration may not be

used to advance new facts or arguments not previously presented to the Court.

Insco only points to one erroneous fact contained in the Opinion — that Interim

Order 11 was issued on February 11, 2011 and not July 7, and it was only

subsequent briefing that lasted until July 7.  As detailed below, however, this

correction does not alter my conclusion that the disclosure of such a large volume

of panel e-mails by Diamond taints the arbitration proceedings.  Insco's argument

for reconsideration thus must rest on the need to prevent manifest injustice.

      **B.**    **Reconsideration Is Not Warranted to Prevent Manifest Injustice**

      Despite the lack of contrary controlling precedent or newly available

factual evidence, Insco urges that reconsideration is warranted here for two

reasons: (1) to the extent that any arbitral or ethical guidelines were violated, such

guidelines apply to arbitrators and not to parties and their counsel, and (2) the e-

---

[27]    8/2/11 Pre-Motion Conference Transcript at 4:16-18.

mails disclosed by Diamond in this case had no substantive bearing upon "live and

contested" issues before the arbitration panel.  However, because these arguments

merely rehash and reargue issues that I considered and rejected in the Opinion,

reconsideration is denied.

> **1.      Counsel for Insco Acted Inappropriately in Obtaining Panel E-mails**

Insco is correct that both the ARIAS Code of Conduct and the

American Bar Association's Code of Ethics for Arbitrators in Commercial

Disputes, by their terms, apply only to arbitrators and not parties or their counsel.[28]

This Court, though, never held otherwise.[29]  Plainly, however, these guidelines help

to firmly establish what type of communications are off limits to parties in a

pending arbitration.  Moreover, I held that in addition to Freeborn's actions being

---

[28]      *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *6 ("'[I]t is not proper at any time *for arbitrators* to . . . inform anyone concerning the contents of the deliberations of the arbitrators.'") (quoting ARIAS Code of Conduct) (emphasis added); *id.* ("'*[A]n arbitrator* should not reveal the deliberations of the Panel. To the extent an arbitrator predicts or speculates as to how an issue might be viewed by the Panel, *the arbitrator* should at no time repeat statements made by any member of the Panel in deliberations, even his or her own.'") (quoting ARIAS Additional Ethical Guidelines) (emphasis added); *id.* ("'[I]n a proceeding in which there is more than one arbitrator, it is not proper at any time *for an arbitrator* to inform anyone about the substance of the deliberations of the arbitrators.'") (quoting American Bar Association's Code of Ethics for Arbitrators in Commercial Disputes) (emphasis added).

[29]      *See id.* (noting that the arbitral guidelines were "not considered binding law upon the parties").

violative of the non-binding arbitral guidelines, Freeborn also violated the ethical

rules applicable to lawyers in adversarial proceedings.[30]   Indeed, the Court was in

full agreement with the conclusion of the arbitration panel here that the disclosure

of intrapanel e-mails was highly inappropriate.[31]

   Additionally, this Court never found that Freeborn or Insco initiated

the request for e-mails from Diamond.[32]   However, even if the idea to disclose e-

---

[30]   *See id.* at *7 ("I fully agree with the panel's findings in Interim Order
12 that Insco's conduct was inappropriate and that it was a violation of the New
York State Rules of Professional Conduct, as well as multiple non-binding
arbitration guidelines referred to previously.").  While Insco claims that the Court
can only apply the Rules of Professional Responsibility (the "Rules") to conduct
by counsel *in proceedings before the court*, *see* 11/4/11 Insco's Reply in Further
Support of Its Motion for Reconsideration at 3 (emphasis in original), the Rules
expressly provide for their application in the context of arbitrations.  *See, e.g.*, New
York Rules of Professional Conduct,  22 NY.C.R.R. § 1200.00 R. 1.0(l) and (w)
(defining any "matter" to include "arbitration," and "tribunal" to include "an
arbitrator in an arbitration proceeding"); *see also Yardis Corp. v. Levine*, No. 89
Civ. 8794, 1991 WL 3535, at *2 (E.D. Pa. Jan. 11, 1991) ("The district courts have
inherent authority to enforce professional rules of conduct. . . . The rules of
professional responsibility are applicable in arbitration proceedings. Courts in
Pennsylvania and New York have applied such rules in compulsory court-annexed
arbitration hearings and in private contractual commercial arbitration hearings.")
(citing *Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz*, No. 87 Civ. 6824,
1988 WL 138149 (S.D.N.Y. Dec. 12, 1988) (disqualifying counsel in an
arbitration)).

[31]   *See* the Order.

[32]   *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *2 ("On
February 11, 2011, Diamond shared certain private e-mail communications among
panel members with Freeborn.").

mails came from Diamond, Freeborn cannot defend itself by arguing that someone

else initiated contact.  Just as an attorney may not affirmatively seek out

confidential or prohibited material, he or she cannot fail to exercise caution in the

receipt of information that appears to be confidential or prohibited.[33]  There can be

no serious question, moreover, that obtaining confidential panel deliberations and

ignoring an adversary's request to identify or produce them involves "'dishonesty .

. . or misrepresentation'" and is "'prejudicial to the administration of justice.'"[34]

Thus despite the general aversion in this circuit to attorney disqualification,[35] the

Court must step in when necessary and impose ethical boundaries in order to

---

[33]     *See, e.g.*, *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712, 727 (D. Conn. 1991) (holding that an attorney is "duty-bound not to attempt to induce [a third party] to communicate [confidential] information to him"); *American Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.*, Nos. CV–LV–82–26–HDM, CV–LV–82–96–HDM, 1986 WL 57464, at *6 (D. Nev. Mar. 11, 1986); *Shelton v. Hess*, 599 F. Supp. 905, 911 (S.D. Tex. 1984) ("The fact that defendant [] may have initiated the [unethical] connection between himself and [counsel] does not militate against" disqualification of counsel.).

[34]     *Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *7 (quoting the New York Rules of Professional Conduct,  22 NY.C.R.R. § 1200.00 R. 8.4(c)-(d)). Although violations of the Rules do not always warrant disqualification, the Rules provide helpful guidance to a court in exercising its inherent authority.  *See GSI Commerce Solutions, Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010) (Although not dispositive, "the American Bar Association ('ABA') and state disciplinary codes provide valuable guidance.").

[35]     *See Nyquist*, 590 F.2d at 1246.

"preserve the integrity of the adversary process."[36]

Additionally, although Insco argues, both here and in its memorandum in opposition to NNIC's motion for disqualification, that disclosure of the intrapanel e-mails in question was permissible in this arbitration, that assertion is clearly refuted by the Order.[37]  In fact, Insco admits that because ex-parte communications are common in reinsurance arbitrations, the arbitration panel itself is the best judge of which communications are off-limits to parties.[38]  Thus, there is no reason that I should disagree with the finding of the arbitration panel in its Order finding the disclosures inappropriate.  Also, notwithstanding Insco's assertions to the contrary, NNIC strongly asserts that it was never provided with panel deliberations or communications by Nergaard.[39]  Finally, I must again

---

[36]     *Hempstead Video, Inc.*, 409 F.3d at 132 (quotation marks omitted). *Accord Emle Indus., Inc. v. Patentex, Inc.*, 478 F.2d 562, 575 (2d Cir. 1973) ("Without firm judicial support, the [Rules of Professional Responsibility] would be only reverberating generalities.").

[37]     *See* Order ("[T]his action by Mr. Diamond [ ] struck at the heart of the arbitral process in that the deliberations among the Panel *are solely for the Panel's use* and no one else.") (emphasis added).

[38]     *See* Insco's Memorandum of Law in Support of Its Motion for Reconsideration at 3.  I find no merit, however, in Insco's contention that "[i]f an arbitrator shares information with counsel, it must be presumed that [] the arbitrator is abiding by his or her obligations and is authorized to do so." *Id.*

[39]     *See* 10/31/11 Petitioner NNIC's Memorandum of Law in Opposition to Insco's Motion For Leave to File the Declaration of Dale Diamond at 19.

emphasize, that the Opinion — as noted therein — was not a broad condemnation of all ex-parte communications between parties and their arbitrators.[40]  In sum, Insco raises no new issues or matters that would lead to the conclusion that my Opinion has resulted in manifest injustice.  Insco's concerns are properly addressed on appeal.

### 2.    The Disclosure of Intrapanel E-mails Tended to Taint the Underlying Proceedings

Insco argued in its motion to disqualify, and again asserts here, that even if e-mails were improperly disclosed to Freeborn, such disclosure did not tend to taint the underlying proceedings.[41]  However disqualification is warranted "in the rare circumstance where an attorney's conduct 'poses a significant risk of trial taint.'"[42]  As outlined in the Opinion, even if none of the e-mails featured a detailed

---

[40]    *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at \*7 ("I understand and appreciate that ex parte feedback from party-appointed arbitrators regarding the arbitration panel's view of the facts and issues can help the parties narrow the issues in dispute, focus on the evidence and arguments the arbitrators are most interested in, and reach a negotiated settlement.") (quotation marks omitted.").

[41]    *See Canal+ Image UK Ltd. v. Lutvak*, No. 10 Civ. 1536, 2011 WL 2396961, at \*9 (S.D.N.Y. June 8, 2011) ("[D]isqualification is warranted only if 'an attorney's conduct tends to taint the underlying trial.'") (quoting *GSI Commerce Solutions, Inc. v. BabyCenter, LLC*, 618 F.3d 204, 209 (2d Cir. 2010)).

[42]    *Decker v. Nagel Rice LLC*, 716 F. Supp. 2d 228, 231 (S.D.N.Y. 2010) (quoting *Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981)).

exposé of an arbitrator's opinions on dispositive issues, the e-mails did contain

statements related to subject matter that was pending before the arbitration panel.[43]

Moreover, in certain instances it is not clear from the record exactly how long e-

mails had been in Freeborn's possession, as the Charts fail to indicate when

particular chains were forwarded to Freeborn.[44]  Thus there is a serious risk that at

some point Freeborn possessed information it was not entitled to.[45]  In fact,

Freeborn even used portions of e-mails that it obtained from Diamond as an exhibit

to this Court in a related action — evincing Freeborn's belief that these e-mails

were not wholly insignificant.  Finally, as noted in the Opinion, there is no

question that the cumulative effect of the disclosure of such a large volume of

intrapanel communications tends to seriously taint the entirety of NNIC and

Insco's arbitration.[46]  Accordingly, Insco has failed to raise an appropriate ground

---

[43]     *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *8-10
("Because many of these e-mails relate to actual and ongoing disputes in the
arbitration, disqualification of Freeborn is warranted.").

[44]     *See id.* at *9 n.108.

[45]     *See id.* at *10 ("[D]isclosure of the foregoing discussions tended to
taint the proceedings, and to the extent there is any doubt, it should be resolved in
favor of disqualification."); *see also Hull v. Celanese Corp.*, 513 F.2d 568, 571 (2d
Cir. 1975) ("[I]n the disqualification situation, any doubt is to be resolved in favor
of disqualification.").

[46]     *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *8-10.

for reconsideration.

## V.    CONCLUSION

For the foregoing reasons, defendant's motion is denied.  The Clerk of

the Court is directed to close this motion [Docket No. 45] and this case is to remain

closed.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            November 15, 2011

**- Appearances -**

**For Plaintiff:**

Matthew C. Ferlazzo, Esq.
Evan L. Smoak, Esq.
Barger and Wolen LLP
10 East 40th Street, 40th Floor
New York, NY 10016
(212) 557-2800/ 2884

Daniel L. FitzMaurice, Esq.
Matthew J. Shiroma, Esq.
Day Pitney, L.L.P.
242 Trumbull Street
Hartford, CT 06103
(860) 275-0181/ 0217

**For Defendant:**

James J. Boland, Esq.
Robin C. Dusek, Esq.
Joseph T. McCullough, IV, Esq.
Catherine A. Miller, Esq.
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000