UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------- X

NORTHWESTERN NATIONAL
INSURANCE COMPANY,

               Plaintiff,

  - against -

INSCO, LTD.,

               Defendant.

------------------------------------------------- X

**OPINION AND ORDER**

11 Civ. 1124 (SAS)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/6/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

I.    INTRODUCTION

On October 3, 2011, this Court issued an Opinion and Order (the "Opinion") granting Northwestern National Insurance Company's ("NNIC") motion to disqualify Freeborn & Peters LLP ("Freeborn") from further representing Insco, Ltd. ("Insco") in a pending arbitration.[1] Insco now moves for a stay of the Court's Opinion pending appeal on the grounds that (1) the Opinion is likely to be reversed on appeal, and (2) this Court's decision to disqualify counsel imposes a severe hardship on Insco. For the following reasons, Insco's motion is

---

[1] *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 4552997 (S.D.N.Y. Oct. 3, 2011).

1

denied.

## II.   BACKGROUND

The facts in this case are fully laid out in the Opinion and can be summarized briefly. NNIC and Insco are parties to an arbitration that began in June 2009 regarding a reinsurance agreement.[2] Pursuant to the parties' agreement, each party selected an arbitrator and a third impartial umpire was selected by lottery.[3] Insco selected Dale Diamond as its party arbitrator, NNIC selected Diane Nergaard, and Martin Haber was appointed umpire.[4]

On February 11, 2011, with the arbitration ongoing, Diamond shared 182 pages of private e-mail communications between panel members — approximately 130 e-mails in total — with Freeborn.[5] Diamond believed that these e-mails showed that Nergaard was biased and could not serve as an impartial arbitrator.[6] Insco's attorneys reviewed all of the e-mails, and on February 15, 2011, Insco sent a letter to the panel and NNIC demanding that all of the arbitrators

---

[2]   *See id.* at *1.

[3]   *See id.*

[4]   *See id.*

[5]   *See id.* at *2.

[6]   *See id.*

resign immediately.[7] Diamond resigned, but Nergaard and Haber did not.[8] NNIC soon grew suspicious that Insco was in possession of intrapanel e-mails when Insco cited to them in a declaration to this Court in connection with an earlier motion in this action.[9] When NNIC demanded that Insco produce the documents, however, Insco refused.[10]

Insco appointed a replacement arbitrator for Diamond, and at the next organizational meeting on June 15, 2011, NNIC complained about the panel e-mails in Insco's possession.[11] Umpire Haber agreed with NNIC that obtaining such communications was a "massive violation," and Insco agreed to produce the documents.[12] Rather than review the e-mails, NNIC hired an attorney, Daniel

---

[7]   *See id.*

[8]   *See id.*

[9]   *See id.*; *see also* 12/10/10 11:53 p.m. E-mail "RE: Panel Disclosures," Ex. 10 to 3/4/11 Declaration of Robin C. Dusek, counsel for Insco, in Support of Insco's Opposition to NNIC's Petition to Appoint an Arbitrator, in *Northwestern Nat'l Ins. Co.*, No. 11 Civ. 1124, Dkt. No. 15 (submitting an e-mail disclosed by Diamond as an exhibit to this Court); *Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 1833303 (S.D.N.Y. May 12, 2011) (denying NNIC's motion to appoint an arbitrator).

[10]   *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *2.

[11]   *See id.* at *3.

[12]   *Id.* (quoting 6/15/11 Organizational Meeting Transcript, Ex. 1 to 7/21/11 Declaration of Matthew C. Ferlazzo, counsel for NNIC, ("Ferlazzo Decl.") at 156:20-25).

FitzMaurice, to review the e-mails and prepare charts indicating when and to whom each e-mail was sent accompanied by a brief summary of its content.[13]

On June 20, 2011, the panel issued Interim Order 12 (the "Order").[14] In the Order, the panel noted that the "'release by Mr. Diamond of intra-panel communications was highly inappropriate,'" but that "'[n]evertheless, this Panel will continue to decide the case on the facts and evidence presented.'"[15] The panel further noted that "'this action by Mr. Diamond [ ] struck at the heart of the arbitral process in that the deliberations among the Panel are solely for the Panel's use and no one else.'"[16] The panel Order also gave the parties time to make "appropriate motions before a court."[17]

NNIC then moved in this Court to disqualify Freeborn because it had inappropriately obtained intrapanel e-mails.[18] In response, I held that (1) the

---

[13] *See id.*

[14] *See id.*

[15] *Id.* (quoting 6/30/11 Interim Order 12 (the "Order"), Ex. 7 to Ferlazzo Decl.).

[16] *Id.* (quoting Order).

[17] *Id.* The panel refused to consider what if any sanctions were warranted by Freeborn's involvement in obtaining panel e-mails. *See id.* at *6 ("[T]he panel simply stated 'it's not really a panel issue.'").

[18] *See id.* at *4.

question of attorney disqualification is properly decided by the Court, and not by arbitrators, and (2) Freeborn's actions here warranted disqualification.[19] Insco immediately filed a notice of appeal. In response to motions by Insco, I subsequently (1) denied Insco's request to file the Declaration of Dale Diamond in support of its motion for reconsideration,[20] and (2) denied Insco's motion for reconsideration of the Opinion.[21] Insco now moves for a stay of the Opinion pending appeal claiming that the Opinion is likely to be reversed on appeal, and that attorney disqualification is a burdensome remedy.[22]

## III.  LEGAL STANDARD

Federal Rule of Appellate Procedure 8(a)(1) provides that "[a] party must ordinarily move first in the district court for . . . a stay of the judgment or order of a district court pending appeal." "The authority to grant stays has historically been justified by the perceived need 'to prevent irreparable injury to

---

[19] *See id.* at *5-7.

[20] *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 5516973 (S.D.N.Y. Nov. 9, 2011).

[21] *See Northwestern Nat'l Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124, 2011 WL 5574953 (S.D.N.Y. Nov. 15, 2011).

[22] *See* 10/31/11 Memorandum of Law in Support of Insco's Motion for Stay of the Court's Opinion ("Def. Mem.") at 1.

the parties or to the public' pending review."[23] It is thus "beyond question that a district court has the power to grant a stay of its own order pending the determination of an appeal therefrom."[24]

However, a stay "'is not a matter of right, even if irreparable injury might otherwise result to the appellant.'"[25] The burden in such actions is on the party seeking the stay.[26] Courts consider four factors in determining whether to grant a stay: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'"[27] "[T]he degree to which a factor must be present varies with the strength of the

---

[23] *Nken v. Holder*, 556 U.S. 418, 565 (2009) (quoting *Scripps-Howard Radio v. F.C.C.*, 316 U.S. 4, 9 (1942)).

[24] *Jock v. Sterling Jewelers, Inc.*, 738 F. Supp. 2d 445, 447 (S.D.N.Y. 2010) (quotation marks omitted).

[25] *Nken*, 556 U.S. at 565 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672 (1926)).

[26] *United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) ("A party seeking a stay of a lower court's order bears a difficult burden.").

[27] *Nken*, 556 U.S. at 560-61 (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). *Accord In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d 167, 170 (2d Cir. 2007); *Mohammed v. Reno*, 309 F.3d 95, 100 (2d Cir. 2002).

6

other factors, meaning that 'more of one [factor] excuses less of the other.'"[28]

Moreover, "the decision to grant a stay always involves an 'exercise of judicial discretion' and 'is dependent upon the circumstances of the particular case.'"[29]

## IV. DISCUSSION

Insco argues that all four factors weigh in favor of a stay and that "the public policy concerns alone warrant granting a stay."[30] While Insco will suffer some harm in the event that it is required to proceed with the arbitration during the pendency of the appeal without its lawyer of choice, I find that the balance of the factors here weighs against a stay. Furthermore, if Freeborn is permitted to continue representing Insco in the arbitration during the pendency of the appeal, any relief resulting from the Opinion will be illusory.[31]

### A. Insco Is Not Likely to Succeed on the Merits

The first factor, success on the merits, weighs against the grant of a stay here. Insco advances two arguments as to why it is likely to succeed on the

---

[28] *In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170 (quoting *Thapa v. Gonzales*, 460 F.3d 323, 334 (2d Cir. 2006)).

[29] *Jock*, 738 F. Supp. 2d at 447 (quoting *Nken*, 556 U.S. at 565).

[30] Def. Mem. at 4.

[31] *See* NNIC's Memorandum of Law in Opposition to Insco's Motion for Stay ("Pl. Mem.") at 1 ("[A] stay would mean in effect that NNIC lost its motion to disqualify Freeborn.").

merits: (1) this Court lacks subject matter jurisdiction to have entertained the motion to disqualify, and (2) the Opinion involves an issue of first impression for which there is no legal basis.  However, Insco's arguments fail to show a strong likelihood of success on the merits.

### 1. Insco Is Not Likely to Succeed Based on Subject Matter Jurisdiction

Insco is correct that on appeal, a court may consider the issue of subject matter jurisdiction even if it was not challenged in the district court.[32] Insco is further correct in asserting that "the Federal Arbitration Act . . . does not independently confer subject matter jurisdiction on the federal courts."[33]  However, although Insco argues that NNIC has "never even attempted to establish" the Court's jurisdiction in this action,[34] NNIC expressly asserted at the outset of this case — in its petition to appoint an arbitrator — that jurisdiction was proper under

---

[32] *See Fun-Damental Too, Ltd. v. Gemmy Indus. Corp.*, 111 F.3d 993, 1006 (2d Cir. 1997); *see also Local 377, RWDSU, UFCW v. 1864 Tenants Ass'n*, 533 F.3d 98, 99 (2d Cir. 2008) ("[T]he federal courts are under an independent obligation to examine their own jurisdiction.") (quotation marks omitted).

[33] *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 63 (2d Cir. 2009).  *Accord Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983) ("The Arbitration Act is something of an anomaly in the field of federal-court jurisdiction. It creates a body of federal substantive law establishing and regulating the duty to honor an agreement to arbitrate, yet it does not create any independent federal-question jurisdiction.").

[34] Def. Mem. at 7.

section 1332(a)(2) of Title 28 of the United States Code because the parties were diverse — one was a Wisconsin corporation and the other a Bermuda corporation — and the amount in controversy exceeded $75,000 exclusive of costs and interests.[35] While Insco concludes that the Federal Arbitration Act (the "FAA") alone would not properly confer jurisdiction in this case, NNIC has always relied on diversity jurisdiction here.[36] Insco has never before challenged the applicability of diversity jurisdiction here, and I find no independent reason to second-guess NNIC's allegations regarding jurisdiction. *First*, the parties are diverse. *Second*, in terms of amount in controversy, courts look to the amount at stake in the underlying arbitration when assessing whether diversity jurisdiction exists in a petition to compel arbitration or to appoint an arbitrator.[37] Here, the parties' briefs

---

[35] *See* 2/18/11 NNIC's Petition to Appoint an Arbitrator, No. 11 Civ. 1124, Dkt. No. 1.

[36] *See* Pl. Mem. at 10.

[37] *See Karsner v. Lothian*, 532 F.3d 876, 883 (D.C. Cir. 2008) ("'[T]he amount in controversy in a petition to compel arbitration or appoint an arbitrator is determined by the underlying cause of action that would be arbitrated.'") (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995)); *see also Webb v. Investacorp, Inc.*, 89 F.3d 252, 256 (5th Cir. 1996); *Manze v. State Farm Ins. Co.*, 817 F.2d 1062, 1067-68 (3d Cir. 1987) (citing *Davenport v. Proctor & Gamble Mfg. Co.*, 241 F.2d 511 (2d Cir. 1957)); *R.C. Spenceley, Inc. v. Topa Ins. Co.*, Civ. No. 2010-115, 2011 WL 3742181, at *4 (D.V.I. Aug. 24, 2011) ("Here, in assessing the amount-in-controversy, the Court . . . looks beyond the 'initial step' of the issue of the selection of an umpire."); *Brean Murray, Carret & Co. LLC v. Cornette*, No. 07 Civ. 2381, 2007 WL 1789118, at *1 (S.D.N.Y. June 20, 2007);

submitted in connection with an earlier motion explain that the amount in controversy between the parties to the arbitration is well over a million dollars.[38] Therefore, this Court had jurisdiction to entertain NNIC's original petition to appoint an arbitrator as well as the subsequent motion to reopen the case and disqualify counsel.[39]

### 2. Insco Is Not Likely to Succeed Based on Novelty

Insco next argues that the Opinion "represents a new and unprecedented involvement in private arbitration by a federal district court."[40] Although Insco may be correct that there is no case squarely on point here,[41] I

---

*MJR Int'l, Inc. v. American Arbitration Ass'n*, No. 06 Civ. 0937, 2007 WL 1101250, at *2 (S.D. Ohio Apr. 11, 2007) ("[T]he correct way to value most claims relating to arbitration proceedings is to do so with reference to the amount at stake in the arbitration."); *Maxons Restorations, Inc. v. Newman*, 292 F. Supp. 2d 477, 481-83 (S.D.N.Y. 2003). *Cf. San Carlo Opera Co. v. Conley*, 72 F. Supp. 825, 829 (S.D.N.Y. 1946), *aff'd*, 163 F.2d 310 (2d Cir. 1947) (relying on the amount in controversy in the underlying arbitration in an attempt to establish diversity jurisdiction in connection with a motion to disqualify an arbitrator).

[38] *See, e.g.*, 2/18/11 NNIC's Memorandum of Law in Support of Its Petition to Appoint an Arbitrator, No. 11 Civ. 1124, Dkt. No. 4, at 4-5.

[39] This Court has previously relied on diversity jurisdiction to consider a motion to disqualify counsel in an arbitration. *See Employers Ins. Co. of Wausau v. Munich Reinsurance Am., Inc.*, No. 10 Civ. 3558, 2011 WL 1873123, at *1 (S.D.N.Y. May 16, 2011).

[40] Def. Mem. at 10.

[41] *See* 8/2/11 Pre-Motion Conference at 4:16-18 (noting that "it may [be that] the facts are sui generis. It may be there is no reported case about an attorney

cannot agree that the notion of a district court disqualifying counsel in an arbitration for unethical conduct presents the type of legal novelty that warrants a stay. *First*, though it may be rare, this is not the first time a court in this district has disqualified counsel in an arbitration.[42]  *Second*, while the prior cases disqualifying counsel in arbitration — as well as the majority of all cases disqualifying counsel — involve conflicts of interest and former client conflicts, a court may always exercise its inherent authority to disqualify attorneys for unethical behavior that tends to taint a court proceeding.[43]  This case does not present a novel legal issue because it is well settled that "the courts have not only

---

having access to the communications among the arbitration panel.").

[42]   *See Munich Reinsurance Am., Inc. v. ACE Prop. & Cas. Ins. Co.*, 500 F. Supp. 2d 272, 275-76 (S.D.N.Y. 2007) (holding that the court rather than arbitrators determines issues of attorney disqualification in arbitration); *Yardis Corp. v. Levine*, No. 89 Civ. 8794, 1991 WL 3535, at *2 (E.D. Pa. Jan. 11, 1991) ("The district courts have inherent authority to enforce professional rules of conduct. . . . The rules of professional responsibility are applicable in arbitration proceedings. Courts in Pennsylvania and New York have applied such rules in compulsory court-annexed arbitration hearings and in private contractual commercial arbitration hearings.") (citing *Gwertzman v. Gwertzman, Pfeffer, Tokar & Lefkowitz*, No. 87 Civ. 6824, 1988 WL 138149 (S.D.N.Y. Dec. 12, 1988) (disqualifying counsel from representing a party in arbitration based on New York Code of Professional Responsibility)). *Cf. Bidermann Indus. Licensing v. Avmar N.V.*, 570 N.Y.S.2d 33, 33 (1st Dep't 1991) (holding that state courts can disqualify counsel in an arbitration).

[43]   *See, e.g., Hempstead Video, Inc. v. Incorporated Vill. of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005).

11

the supervisory power but also the duty and responsibility to disqualify counsel for unethical conduct prejudicial to [its] adversaries."[44] Thus Insco merely questions this court's *power* to disqualify an attorney for the unethical conduct presented here, rather than based on a novel *legal issue.*[45]

   Insco further claims that the Opinion "raises a host of novel issues that necessarily impact the conduct of reinsurance arbitrations in general, the permissible scope and nature of ex parte communications in those arbitrations, the legal and ethical obligations of arbitrators, and the legal and ethical obligations of *lawyers to their clients* when those lawyers learn of possible misconduct."[46] Indeed, those are all important issues. The Opinion, however, involves no novel questions of law relating to those issues. *First*, I reiterate that the Opinion is not a broad condemnation of ex parte communications or a general guide to reinsurance arbitrations.[47] In fact, parties are generally free to agree to the terms and conditions

---

   44  *Ceramco, Inc. v. Lee Pharm.*, 510 F.2d 268, 271 (2d Cir. 1975).

   45  *Contrast e.g.*, *Jock*, 738 F. Supp. 2d at 447 ("[P]laintiffs' appeal presents an issue of first impression that relates to the application of a *newly minted rule* by a sharply divided Supreme Court . . . which reversed the contrary rule that the Second Circuit previously set forth in that case.") (emphasis added).

   46  Def. Mem. at 5 (emphasis in original).

   47  *See Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *7 ("I understand and appreciate that ex parte feedback from party-appointed arbitrators regarding the arbitration panel's view of the facts and issues can help the parties

that will govern ex parte disclosures in an arbitration and a court will not normally interfere with noncoercive private arrangements. *Second*, the present case involves conduct that the arbitration panel explicitly found to be inappropriate.[48] Also, to the extent that Diamond, rather than Freeborn, initiated the disclosure, Freeborn still acted unethically by failing to exercise caution before reviewing such a disclosure.[49] Moreover, the Order expressly contemplated allowing either party to seek a remedy in court.[50] Thus, on the unique facts of this case, it was within this Court's discretion to disqualify counsel.

### B. Irreparable Harm

The second prong weighs in Insco's favor. Courts in this district have long acknowledged "that disqualification has an immediate adverse effect on the client by separating him from counsel of his choice."[51] Moreover, I understand

---

narrow the issues in dispute, focus on the evidence and arguments the arbitrators are most interested in, and reach a negotiated settlement.") (quotation marks omitted.").

[48] *See* Order; *see also Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *7 (noting the Court's agreement with the arbitration panel that disclosure and use of private panel e-mails was inappropriate).

[49] *See Northwestern Nat'l Ins. Co.*, 2011 WL 5574953, at *3.

[50] *See* Order (giving the parties time to "make appropriate motions before a court").

[51] *Board of Educ. of City of N.Y. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

13

that "Insco's relationship with its lead arbitration lawyer spans more than two decades" and that lawyers are not fungible.[52] Thus, while the harm is somewhat ameliorated by Insco's retainer of new counsel to represent it in the arbitration,[53] this does not completely alleviate irreparable harm. Therefore, unless the parties here agree to stay the arbitration pending appeal, Insco will be irreparably harmed by being forced to proceed in the arbitration without its counsel of choice.[54] However, notwithstanding the difficulty inherent in forcing Insco to proceed without its attorney of choice, I note that (1) it was counsel's decision not to exercise caution upon receiving voluminous panel e-mail disclosures that led to this disqualification, and (2) if Freeborn is permitted to continue representing Insco in this arbitration while the appeal is pending, the sanction imposed by the Opinion will be effectively nullified.

### C. Prejudice to NNIC

---

[52] Def. Mem. at 11.

[53] *See id.*; Pl. Mem. at 17-18.

[54] Insco may, of course, move for an expedited appeal, *see* Fed. R. App. P. 2 ("On its own or a party's motion, a court of appeals may — to expedite its decision or for other good cause — suspend any provision of these rules in a particular case and order proceedings as it directs."). I do not understand why Insco has allegedly stated that it will not pursue this option. *See* Pl. Mem. at 16. However, requiring NNIC to request a stay from the arbitration panel pending appeal, as Insco suggests, would unfairly delay a resolution, something NNIC presumably desires.

The third prong weighs against granting the stay here. While it is true that NNIC may still proceed with the arbitration if Freeborn is allowed to represent Insco, and that NNIC can always request a stay of the arbitration, granting a stay would tend to punish NNIC. *First*, if NNIC requested a stay it would be unable to proceed with the arbitration that it initiated.[55] *Second*, to the extent that Freeborn's actions have already tainted the underlying arbitration, granting a stay would obligate NNIC to continue participating in the arbitration with the involvement of Freeborn, thereby denying NNIC the relief it sought in the first place.[56]

### D. The Public Interest

The public interest factors here do not support the grant of a stay. Insco argues that the public interest here weighs overwhelmingly in favor of a stay because of the public policy concerns involved in (1) allowing parties to be represented by counsel of their choice; (2) allowing arbitrators to expose bias and misconduct; and (3) promoting the free flow of ex parte communications with

---

[55] Moreover, NNIC claims to be "a company in rehabilitation" that emphasizes the need for the arbitration to continue expeditiously — although I note, without apportioning the blame, that the arbitration until now has been anything but expeditious. Pl. Mem. at 15.

[56] I also cannot understand Insco's argument that there will be no prejudice because it has offered to "pay NNIC 100% of the amounts claimed to be owed." Def. Mem. at 12; Pl. Mem. at 17 (denying such an offer). If that was indeed the case, it is curious that the parties are still in arbitration.

party arbitrators. These reasons fail to justify the grant of a stay here because (1) they are not public consequences of the Opinion, and (2) they are mostly duplicative of Insco's arguments concerning the other three prongs of the stay test.

### 1. Insco's Public Interest Factors Do Not Affect the Public

The public interest factor must address the consequences of a court's order above and beyond the hardship that the order immediately imposes on the parties before the court.[57] In other words, the fourth prong represents a different inquiry from the second and third prongs of the stay test. The cases cited by Insco to explain the importance of the fourth prong make this clear.[58]

Here, however, Insco does not focus on the Opinion's consequences to the public, but rather on the way in which Insco believes that the Opinion would

---

[57] *See Natural Res. Def. Council, Inc. v. Winter*, 502 F.3d 859, 863 (9th Cir. 2007) (citing *Hilton*, 481 U.S. at 776); *see also Greendige v. Allstate Ins. Co.*, No. 02 Civ. 9796, 2003 WL 22871905, at *3 (S.D.N.Y. Dec. 3, 2003) ("[T]he public interest is not implicated in this case, which is a purely private litigation.").

[58] *See Brady v. National Football League*, 640 F.3d 785, 794 (8th Cir. 2011) (noting public interest in permitting professional football to be played in 2011); *Natural Res. Def. Council, Inc.*, 502 F.3d at 864 (noting that a stay on an injunction would directly affect the ability of the U.S. Navy to conduct training); *Citizens for Responsibility & Ethics in Wash. v. Office of Admin.*, 593 F. Supp. 2d 156, 165 (D.D.C. 2009) (noting that a stay would directly affect whether certain documents would remain available to be released later under FOIA); *see also In re World Trade Ctr. Disaster Site Litig.*, 503 F.3d at 170-71 (noting public interest in having plaintiffs collect during their lifetimes); *Hirschfeld v. Board of Elections in City of N.Y.*, 984 F.2d 35, 39 (2d Cir. 1993) (noting public interest in plaintiff's name appearing on the ballot in a public election).

serve as bad precedent. For instance, Insco argues that in addition to causing hardship to Insco, the Opinion will limit other parties' abilities in the future to be represented by counsel of their choice and will have chilling effects on reinsurance arbitrations. Insco further expresses concern that after the Opinion, arbitrators can no longer "speak out and reveal corruption."[59] Such arguments, however, are properly addressed at the first prong of the stay test — in considering Insco's likelihood of success on appeal — not the fourth. Furthermore, the decision on appeal will create binding precedent as opposed to the decision now being appealed.

In any event, the holding of the Opinion is narrower than Insco argues. The Opinion was specifically addressed to the situation in which a party — Insco — obtained panel e-mails that the panel asserted were for the use of panel members only. For the same reason that there appear to have been few reported cases of parties gaining access to confidential arbitrator deliberations in the past, I do not expect that such situations will arise with any frequency in the future.

---

[59] Def. Mem. at 15. Of note, however, my holding was simply that parties may not "obtain panel deliberations before the close of the arbitration." *Northwestern Nat'l Ins. Co.*, 2011 WL 4552997, at *8. The FAA is the appropriate avenue by which a party may challenge an arbitration award through allegations of bias *after* the proceeding. *See id.* Arbitrators may also seek out ways to report gross misconduct during an arbitration proceeding that does not involve disclosing panel e-mails to the arbitrating parties.

17

Moreover, to the extent that parties will exercise caution in the future before disclosing or accepting large volumes of intrapanel e-mails, I fail to see how that will negatively affect public policy.

### 2. Insco's Concerns Relate to Its Own Irreparable Harm

Insco additionally argues that the public interest favors a stay here because it will be difficult for Insco to bring a new attorney up-to-speed on the arbitration, and it will vindicate Diamond's action in disclosing e-mails that allegedly showed Nergaard's bias.[60] However, these arguments just reiterate Insco's concerns regarding the burden of disqualification. Such concerns, however, are properly considered in the second prong of the stay test, not the fourth. As detailed above, I recognize that the Opinion imposes certain hardships on Insco. However, because Insco has not shown a strong likelihood of success, because of potential prejudice to NNIC in having to delay the arbitration, and taking into account that Insco has secured new counsel to represent it in arbitration, a stay is not warranted.

Finally, while there is always a strong public interest in moving a case along quickly toward a final disposition,[61] it would certainly not be in the public

---

[60] *See* Def. Mem. at 14-15.

[61] *See Jock*, 738 F. Supp. 2d at 449.

interest to have Freeborn continue to represent Insco in the arbitration in the event the disqualification is affirmed on appeal.[62] In sum, while this case presents an unusual set of facts, Insco has not shown a strong likelihood of reversal on appeal, and I cannot stay the Opinion without effectively nullifying the relief it granted. Insco has thus failed to show that, on balance, a stay of the Opinion is warranted.

## V.  CONCLUSION

For the foregoing reasons, defendant's motion is denied. The Clerk of the Court is directed to close this motion [Docket No. 50] and this case is to remain closed.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          December 5, 2011

---

[62] *Cf. In re Genesis Health Ventures, Inc.*, 367 B.R. 516, 522 (Bankr. D. Del. 2007) (holding that it is not in the public interest "to compel parties to go through the expense of preparing a case for trial when all of that preparation could be rendered moot by a reversal on an interlocutory appeal.").

- **Appearances** -

**For Plaintiff:**

Matthew C. Ferlazzo, Esq.
Evan L. Smoak, Esq.
Barger and Wolen LLP
10 East 40th Street, 40th Floor
New York, NY 10016
(212) 557-2800/ 2884

Daniel L. FitzMaurice, Esq.
Matthew J. Shiroma, Esq.
Day Pitney, L.L.P.
242 Trumbull Street
Hartford, CT 06103
(860) 275-0181/ 0217

**For Defendant:**

James J. Boland, Esq.
Robin C. Dusek, Esq.
Joseph T. McCullough, IV, Esq.
Catherine A. Miller, Esq.
Freeborn & Peters LLP
311 South Wacker Drive
Suite 3000
Chicago, IL 60606
(312) 360-6000